Submitted February 9, 2016, reversed April 12, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GERARDO ENRIQUE AGUILAR-RAMOS,
aka Gerardo Enrique Aguilarramos,
*Defendant-Appellant.*

Multnomah County Circuit Court
130748629; A157293

395 P3d 65

Peter Gartlan, Chief Defender, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

**TOOKEY, J.**

Defendant, who was convicted of fourth-degree assault and resisting arrest after a guilty plea, argues that the trial court erred in imposing $2,663 in restitution. The judgment of conviction was entered on November 13, 2013, but restitution was not determined until June 4, 2014. On appeal, defendant raises two assignments of error. In his first assignment of error, defendant asserts that the trial court erred in determining that there was "good cause" to impose restitution beyond the 90-day timeline established by ORS 137.106(1)(a). In his second assignment of error, defendant argues that the trial court erred when it imposed $2,663 in restitution without sufficient evidence to support that award.[1] For the reasons that follow, we reverse the supplemental judgment.[2]

The relevant facts are undisputed. On November 12, 2013, defendant pleaded guilty to fourth-degree assault and resisting arrest. At that time, the trial court left restitution "open [for] 90 days." On November 13, 2013, the trial court entered the judgment against defendant.

The trial court set a restitution hearing for February 7, 2014, 86 days after entry of the judgment. However, an ice storm caused the county to close the court and cancel the hearing. Later, the prosecutor explained that he believed that the trial court would reschedule the restitution hearing. In April, the prosecutor rescheduled the hearing himself after realizing that the trial court would not automatically reschedule the cancelled hearing.

The rescheduled restitution hearing was set for May 14, 2014. About five minutes before the start of that hearing, the prosecutor was called home for a family emergency. The substitute prosecutor was unable to proceed with the restitution hearing because the prior prosecutor had not provided either the substitute prosecutor or the defense with documentation regarding damages. Later, the prosecutor explained that he thought the state's restitution clerk had

---

[1] Our disposition obviates the need to address this assignment of error.

[2] Defendant appeals only the supplemental judgment. The supplemental judgment only imposed restitution.

sent the defense the restitution documents, but that he had failed to confirm that that had indeed been done. The prosecutor acknowledged that it was his responsibility to ensure that the documents were received by the defense, and that relying on the restitution clerk to perform that task was "not a great excuse."

Again, the restitution hearing was rescheduled and held on June 4, 2014, 203 days after the entry of judgment. At that hearing, the trial court found that the delay in rescheduling the restitution hearing following the February 7 ice storm was the fault of the prosecutor, stating:

> "In this case, I do find that it is the DA's office's delay because of the nature of the hearing and the onus was on the DA to reset.
>
> "* * * * *
>
> "[T]he delay that I find is inadvertent, but it isn't supported by good cause[.] That, there has been no excuse other than inadvertence presented."

Nonetheless, the trial court found that there was good cause for the subsequent delay of the restitution hearing due to the prosecutor's family emergency and subsequent scheduling conflicts which resulted in another three-week delay.

> "That I do find, based on all of the circumstances of this case and the fact that the amount of restitution was made available within the requisite time period, and that there is no prejudice to the defendant—which I agree with [defense attorney], that's not really a factor here, but certainly as a—I think it is something to be considered in a good cause analysis, but it is not the predominant factor at all.
>
> "But the fact that the amount was provided to the defense in the first three months, I do find there is good cause * * * for the delay in this case."

Following the hearing, the court entered a supplemental judgment ordering defendant to pay $2,663 in restitution.

On appeal, defendant argues that the trial court erred when it found "good cause" for permitting the state to seek restitution 203 days after entry of the judgment. Defendant asserts that the state provided no justification for the 117 days of additional delay after the February 7

hearing was canceled due to the ice storm, and that that additional delay was due to the state's inadvertence. In response, the state argues that the delay in this case was not caused by the state's inadvertence or neglect. The state contends that the delay was caused by a misunderstanding about who would reset the restitution hearing following the ice storm and that the total delay was reasonable.[3]

We review a trial court's determination of "good cause" for errors of law. *State v. Biscotti*, 219 Or App 296, 299, 182 P3d 269 (2008). ORS 137.106(1)(a) provides, in pertinent part:

> "When a person is convicted of a crime * * * that has resulted in economic damages, the district attorney shall investigate and present to the court, at the time of sentencing or within 90 days after entry of the judgment, evidence of the nature and amount of the damages. The court may extend the time by which the presentation must be made for good cause."

"[N]ot every error or unfortunate circumstance that causes delay * * * must result in a finding of no 'good cause' for delay." *State v. Condon*, 246 Or App 403, 408, 264 P3d 1288 (2011), *rev den*, 351 Or 649 (2012). However, "good cause provisions have been interpreted by the courts of this state *not* to include prosecutorial inadvertence or neglect." *Biscotti*, 219 Or App at 301 (emphasis in original). "Moreover, 'inattentiveness to the passage of time on the part of the trial court and prosecutor do not constitute good cause[.]'" *State v. Martinez*, 246 Or App 383, 387, 265 P3d 92, *rev den*, 351 Or 507 (2011) (quoting *State v. Arwood*, 46 Or App 653, 657, 612 P2d 763 (1980) (brackets in *Martinez*)).

Here, the restitution hearing was scheduled for February 7, 2014, 86 days after the trial court entered the judgment against defendant. However, an ice storm resulted in the cancellation of that hearing. Rather than promptly rescheduling the hearing, the record indicates that 74 days had passed before the prosecutor realized that it was his responsibility to reschedule the hearing; the hearing was

---

[3] On appeal, the state does not contend that it was not the prosecutor's responsibility to reschedule the cancelled hearing.

then rescheduled for May 14—22 days after the prosecutor made his request. Just before the May 14 hearing was scheduled to begin, the prosecutor was called home due to a family emergency; however, the prosecutor did not provide his replacement or the defense with documentation as to damages, resulting in the hearing again being postponed. Ultimately, when the trial court held the hearing on June 4—another 21 days later—a total of 203 days had passed since the trial court had entered the judgment against defendant.

In this instance, the actions, or inactions, of the prosecutor were the catalyst that led to the delay in holding the restitution hearing. *Cf. Martinez*, 246 Or App at 387 (holding that good cause existed for delay where the delay was the result of the prosecution waiting for a response "from the victim's compensation program about whether they would be covering the victim's damages"); *Condon*, 246 Or App at 408 (holding that good cause existed for delay where much of the delay was the result of the victim's mother gathering "supporting documentation" regarding restitution); *State v. Landreth*, 246 Or App 376, 382, 265 P3d 89 (2011) (holding that good cause existed for delay where the delay was the result of the victim's illness and inability to cooperate earlier with the investigation regarding restitution). While good cause existed for extending the statutory timeframe beyond the 90-day limit due to the ice storm, the same cannot be said for the prosecutor then waiting 74 days to reschedule the hearing. Nor was there good cause to further extend the timeframe another 21 days due to the prosecutor's failure to provide restitution documentation to either the defense or the substitute prosecutor. Such inattentiveness to the state's obligations to reschedule the cancelled hearing and provide necessary discovery documents resulted in over 117 days of delay following the February 7 ice storm. For these reasons, we conclude that, on this record—absent provision for the delay attributable to the ice storm—there was no good cause to impose restitution beyond the 90-day statutory deadline. Accordingly, the trial court erred in imposing restitution 203 days after entry of the judgment.

Reversed.